**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

Keith Rychner, Omer Rychner, and )
Roselyn Rychner, )
                              )     **ORDER GRANTING IN PART AND**
           Plaintiffs,     )     **DENYING IN PART PLAINTIFFS'**
                              )     **MOTION TO COMPEL**
    vs.                         )
                              )
Continental Resources, Inc.,     )
                              )     Case No.:  1:19-cv-071
           Defendants.     )

Before the Court are a Motion to Compel and a Motion for Hearing  filed by Plaintiffs Keith, Omer, and Roselyn Rychner on June 30, 2020.  (Doc. No. 57, 59).  For the reasons below, the Motion to Compel is granted in part and denied in part.  The Motion for Hearing is moot.

## I.    <u>BACKGROUND</u>

The following facts are taken from the Rychers' pleadings and the briefs submitted by the parties.  They are either undisputed or otherwise presumed to be true for the purposes of this order.

Omer Rychner owns property in Dunn County, North Dakota, described as SW4SW4 of Section 28, T147N, R96W.  (Doc. No. 1, ¶ 4).  Keith Rychner owns adjacent property in Dunn County, North Dakota described as SE4SW4 and SW4SE4 of Section 28, T147N, R96W.  (<u>Id.</u> at ¶ 11).

Continental Resources, Inc. ("Continental") is responsible for drilling and operating the Carus 2-28H1 well, which is partially upon the lands owned by Omer Rychner.  (<u>Id.</u> at ¶ 11).   It offered to pay Omer a single lump sum, or, in the alternative, an up-front payment and annual payments.  (<u>Id.</u> at ¶ 6).  Omer rejected its offers.  (<u>Id.</u> at ¶¶ 7-10).

Continental is also responsible for drilling and operating the Carus 2-21H1, 4-28H1, 5-28H,

1

6-28H1, and 7-28H wells, which are located in whole or in part on property owned by Keith Rychner.   (Id. at ¶¶ 12 and 13).   In August 2018, it notified Keith of its intent to drill the aforementioned well and offered to pay him a single lump sum, or, in the alternative, an up-front payment and annual payments on a per acre basis.   (Id. at ¶ 14).   Keith also rejected its offer.   (Id. at ¶ 15).

The Rychners initiated this action against Continental in April 2019, seeking compensation for surface damages to their property pursuant to Oil and Gas Production Damage Compensation Act (hereafter referred to as "the Act"), codified at N.D.C.C. ch. 38-11.1.

Keith and Omer each served Continental with Interrogatories and Requests for Production in November 2019.   Continental served its written responses to Keith and Omer respectively in January 2020.   Attached to its written responses were discs containing electronic copies of certain documents.   On the disc provided to Keith, the documents were organized into a single folder titled "RESP" and were Bates-stamped CLR-Rychner 207-1406.   On the disc provided to Omer, the documents were similarly organized into a single folder titled "RESP" and were Bates-stamped CLR-Rychner 1407-2824.

In December 2019, the Rychners served B.J. Kadrmas, Inc. ("Kadrmas"), a non-party field agent for Continental, with a subpoena duces tecum and notice of a Rule 30(b)(6) deposition. They requested nineteen categories of documents.

Kadrmas objected to the subpoena on January 2, 2020.  On January 24, 2020, at the Rule 30(b)(6) deposition of one if its representatives, Matthew Kostelecky, Kadrmas produced a disc containing electronic copies of the documents it had assembled in response to the Rychners' subpoena.  The documents were broken down into eighteen folders.

The Rychners were dissatisfied with Continental's and Kadrmas's production and contacted Continental to express their concerns.  On January 28, 2020, the Rychners and Continental met and conferred.  On February 3, 2020, Continental responded to the Rychners' concerns by letter.  The parties subsequently had a telephone conference with the undersigned in accordance with the local rules.  They also participated in a settlement conference but were unable to resolve this matter.

On June 30, 2020, the Rychners filed a Motion to Compel.  (Doc. No. 57).  They assert that Continental's general objections to their production requests and the manner in which Continental produced documents did not comport with the requirements of Fed. R. Civ. P. 34.  Additionally, they assert that Kadrmas's responses to their subpoena duces tecum did not comport with the requirements of Fed. R. Civ. P. 34.  They seek an order from the court compelling Continental and Kadrmas to provided supplemental responses to their discovery requests and to otherwise produce the documents that they have requested.  They also seek reimbursement for the expenses they have incurred related to this motion.

On July 14, 2020, Continental filed a response in opposition to the Rychners' motion.  (Doc. No. 60).  On July 21, 2020, the Rychners filed a reply in support of their motion.  (Doc. No. 63).  Thus, the motion has now been fully briefed and is ripe for the court's consideration.

## II.   <u>APPLICABLE LAW</u>

Rule 37 of the Federal Rules of Civil Procedure authorizes motions to compel discovery.  <u>See</u> Fed. R. Civ. P. 37 (a)(1) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.").  Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery as follows:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. Pro. 26(b)(1).

"The scope of discovery under Rule 26(b) is extremely broad." Gowan v. Mid Century Ins. Co., 309 F.R.D. 503, 508 (D.S.D. 2015) (citing 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §§ 2007, 3637 (1970)). "The reason for the broad scope of discovery is that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.'" 8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507–08 (1947)).

"Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery." Colonial Funding Network, Inc. v. Genuine Builders, Inc., 326 F.R.D. 206, 211 (citing Fed. R. Civ. P. 26(b)(1)). After the proponent makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. Jo Ann Howard & Assocs., P.C. v. Cassity, 303 F.R.D. 539, 542 (E.D. Mo 2014) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992), and St. Paul Reinsurance Co. V. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000)). "The party must demonstrate that the requested documents either do not come within the broad scope of relevance defined pursuant to Rule 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosures." Id. (quoted case omitted). Relevancy in this context "has been construed broadly to

encompass any matter that bears on, or that reasonably could lead to another matter that could bear on, any issue that is or may be in the case." <u>Jo Ann Howard & Assocs., P.C. v. Cassity</u>, 303 F.R.D. 539, 542 (E.D. Mo 2014) (citation and quotation omitted); <u>Klein v. Affiliated Grp., Inc.</u>, No. 18-CV-949 DWF/ECW, 2019 WL 1307884, at *2 (D. Minn. Mar. 22, 2019).

## III.   DISCUSSION

### A   Continental

#### 1.   Continental's Responses to Omer's and Keith's Requests for Production

Omer and Keith each served Continental with 18 interrogatories and 22 requests for production.  Their interrogatories and requests are identical in almost all respects.

Continental prefaced its written responses to Keith's and Omer's requests with the following general objection:

> The defendant Continental Resources Inc. objects to the definitions, instructions, and requests for production of privileged materials or any materials that are not calculated to lead to the discovery of admissible evidence.  Defendant Continental Resources will provide responses, documents, and materials only as required by the Federal Rules of Civil Procedure.

(Doc. No. 58-6).  It then went on to respond to each of Keith's enumerated requests for production as follows.  With respect to requests for production numbers 1-8, 11-13, 18-19, and 22, it responded: "Subject to and without waiving the foregoing objections, Continental produces any responsive documents herein."  (<u>Id.</u>).  With respect to requests for production numbers 9 and 11, it responded: "This request is objected to the extent it seeks attorney-client privileged communication.  Subject to and without waiving the foregoing objections, Continental produces any responsive documents herein."  (<u>Id.</u>).  With respect to request for production numbers 14, 16, and 17 , it responded: "This request is objected to as not calculated to lead to the discovery of admissible evidence, overbroad,

5

and unduly burdensome to the extent it seeks drilling and production information.  It is further objected to the extent it seeks attorney-client privileged information subject to and without waiving the foregoing objection, see the documents provided herewith." (Id.).  With respect to request for production number 15, it responded: "This request is objected to as unduly burdensome, as CLR cannot provide responsive documents in possession of another entity.  Subject to and without waiving the foregoing objection, see the documents provided herewith." (Id.).  With respect to request number 20, it objected on the grounds the request was overbroad and not calculated to lead to the discovery of admissible evidence.  (Id.).  With respect to request numbers 21 and 22, it responded  simply that it had no responsive documents.  (Id.).  It similarly responded to Omer's requests for production.  As noted above, it provided the documents in PDF format on discs to both Keith and Omer.

### 2.    General Objections

The Rychners take issue with Continental's general objection and responses to their requests for production. Specifically, they assert that Continental's responses to their requests do not comport with the specificity requirements of Rule 34, making it difficult, if not impossible, for them to discern exactly what Continental is agreeing to produce.  They ask the court to strike Continental's general prefatory objection along with the references to it in Continental's responses to each of their individual document requests and to direct Continental to produce Bates-stamped copies of any documents it may have withheld pursuant to its general prefatory objection.

In response, Continental first denies that it withheld any documents pursuant to its general objection.  Second, it emphasizes that, prior to involving the court, it informed the Rychners via letter dated February 3, 2020, that no documents had been withheld with respect to request numbers

1-10 and 12-16, that it did not believe any documents had been withheld with respect to request number 11, but that certain documents had been withheld in response to Keith's request numbers 14, 16, 17, and 20, and in response to Omer's request numbers. 16 and 20.  Third, it maintains that its objections to these last requests were valid.

Rule 34(b) requires that a response to a request for production of documents "must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2).  In other words, "[o]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections."  Cartel Asset Mgmt.  V. Ocwen Fin. Corp., No 01-cv-01644-REB-CBS, 2010 WL 502721, at * 10 (D. Colo. Feb. 8, 2010).

General objections are of little value.  In the face of such objections, it is impossible to know whether information has been withheld and, if so, why.  This is particularly true where a general objection has been incorporated into the responses to particular requests with no attempt to show the application of each objection to the particular request.

In Heller v. City of Dallas, the district court opined that, outside of the privilege and work product doctrine, simply responding to a document request "subject to" and "without waiving" objections is not consistent with the Federal Rules.  See 303 F.R.D. 466, 487.  Other courts have similarly looked upon such responses with disfavor.  See, e.g.,  Liguria Foods, Inc. v. Griffith Lab'ys, Inc., 320 F.R.D. 168, 187 (N.D. Iowa 2017) ("[S]imply stating that a response is 'subject to' one or more general objections does not satisfy the 'specificity' requirement, because, for example, it leaves the propounding party unclear about which of the numerous general objections is purportedly applicable as well as whether the documents or answers provided are complete, or whether responsive documents are being withheld."); cf. Broom, Clarkson, Lanphier & Yamamoto

7

v. Kountze, 2015 WL 7302226, at *7 (D. Neb. Nov. 18, 2015) ("Although it is common practice for a party to respond to discovery requests subject to and without waiving objections, such responses prevent the requesting party from knowing whether all information has been provided."); Taylor-Shaw v. Bestway Rent-to-Own, No. 5:09CV00329 JLH, 2010 WL 2998796, at *3 (E.D. Ark. July 28, 2010) (overruling the defendant's qualified objections to the plaintiff's interrogatories).

The court finds that Continental's general objection does not comport with Rule 34's specificity requirement. Consequently, the court orders it stricken. Continental should update its disclosures as necessary. If what Continental has represented is true, that it has not withheld any documents pursuant to its general objection, then its work is done as the objection was superfluous from the start.

### 3.    Manner of Production

The Rychners next object to the manner in which Continental produced the documents in response to their request. They characterize Continental's production as an unorganized document dump. They assert that Continental violated the spirit, if not the letter, of the discovery rules because it neither produced the documents as kept in the ordinary course of business nor delineated which documents were responsive to which requests. In an effort to illustrate the disorganization of Continental's production, they have submitted screen shots from their computer of the directory structure on the discs provided to them by Continental. (Doc. No. 58-10). The first screen shot is of two folders, named "Docs Keith Rychner RFP" and "Docs Omer Rychner RFP." (Id.). The second screen shot is of a subfolder named "RESP." (Id.). The third screen shot is a list of the "RESP" subfolder's contents: approximately 234 Bates-numbered PDF files. (Id.). They ask the court to require Continental to identify which document is responsive to which request.

Continental disputes Rychners' characterization of its production as a document dump and

8

in so doing maintains that it has produced documents as kept in the ordinary course of business, which is all that is required of it under the rules.  See Bala City Line, LLC v. Ohio Security Insur. Co., 2017 WL 3443218 (E.D. Penn. 2017) (holding the defendant's production of 3,293 documents as they were kept in the ordinary course of business comported with the requirements of Rule 34 and that defendant did not have to further label the documents to correspond to the categories in the plaintiff's request).  Specifically, it asserts:

> Continental produced well files related to the surface damage as they are kept in Continental's usual course of business. The only change made to the files was to [B]ate stamp the individual documents for production, resulting in the screen shot provided by the Plaintiffs.  A screen shot provides no information, but the actual documents do.  The documents provided show they are files kept in the ordinary course of business as received by Continental from its land agent Kadrmas.

(Doc. No. 6).  It has inserted a table into its brief that breaks down several of the documents it produced by Bates number and description.  It has also attached indexes to its brief that  breaks down all of the documents it produced by Bates number and description.

Pursuant to Rule 34, unless the parties otherwise agree, or the court orders otherwise, a party responding to a request for production has the option of producing them "as they are kept in the usual course of business," or organizing and labeling them "to correspond with the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i).  This rule is intended to prevent parties from hiding "a needle in a haystack" and to minimize the costs associated with discovery.  Hagemeyer N. Am., Inc. v. Gateway Data Sciences Corp., 222 F.R.D. 594, 598 (E.D. Wisc. 2004).   A party claiming  that the documents were produced as were kept in the ordinary course of business bears the burden of demonstrating that fact.  See Johnson v. Charps Welding & Fabricating, Inc., No. 14-CV-2081 (RHK/LIB), 2017 WL 9516243, at *21 (D. Minn. Mar. 3, 2017).

Having reviewed the record, the court concludes that Continental has produced the

documents in substantially the same manner in which they were kept.   Any unwieldliness of Contintental's production is mitigated by the provision of indexes by Continental to guide the Rychners.   The indexes organize the documents by Bates stamp and description.   They also appear to sort the production of electronic communications by date.   With this information, the Rychners should, with reasonable effort, be able to discern which documents are responsive to which requests. The documents were produced electronically and should therefore be searchable.   Accordingly, the court finds that the manner of Continental's production comports with requirements of Fed. R. Civ. P. 34(b)(2)(E)(i). The court next addresses the Rychners' issues with Continental's objections to their respective request for production number 20.

### 4.      Objections to Request Nos. 20

Keith's Request for Production No. 20 states as follows:

<u>Request for Production No. 20</u>: All documents showing payments made by Continental to landowners in Dunn County, North Dakota to obtain easements, releases, surface use agreements, leases or other real property rights, licenses or permissions during the period from January 1, 2018, to October 31, 2019.

(Doc. No. 58-4).   Omer's request is the same, except for the applicable time period:

<u>Request for Production No. 20</u>: All documents showing payments made by Continental to landowners in Dunn County, North Dakota to obtain easements, releases, surface use agreements, leases or other real property rights, licenses or permissions during the period from June 1, 2018 to May 31, 2019.

(Doc. No. 58-8).   Continental objected to these requests on grounds of relevance and overbreadth.

The Rychners assert Continental's relevance objection is specious and that information regarding Continental's payments to other landowners in Dunn County is relevant and necessary to determine their statutory damages in this case.   For support, they rely on the North Dakota Supreme Court's answers to this court's certified questions in  <u>Mosser v. Denbury Resources, Inc.</u>, 2017 ND 179.

The Rychners dispute Continental's characterization of Request No. 20 as overbroad.  In so doing they stress that their request is limited to a  very specific group of people (land owners in Dunn County that have received payments from Continental) during a very specific time frame (the times during which Continental was drilling the Carus various wells).   In anticipation of Continental's response that request number 20 as drafted arguably encompassed every conceivable payment it had made to Dunn County landowners, the Rychners narrow request number 20 to exclude payments for office leases and mineral leases.

In response, Continental first asserts that the Rychners' requests are extremely broad and unduly burdensome as the requests encompass, among other things, payments for mineral leases, roadways, electrical lines, aboveground freshwater lines, purchases of real property, leases for office of storage space, and payments for pipeline projects.  Second, it asserts that the Rychners' after-the-fact narrowing of their requests serves to underscore how broad the requests are.  Third, it asserts that <u>Mosser</u> concerned pore space as opposed to the surface and therefore has no application in the context of the instant dispute. Fourth, it asserts the discovery of payments for other projects on different land owned by different surface owners is wholly irrelevant, disproportional to the needs of the case, and will needlessly spawn "meta-litigation" over what other landowners were paid and why.   Fifth, it asserts that the information being sought is confidential and cannot adequately be safeguarded through the issuance of a protective order.

### a.    Relevancy

In <u>Mosser</u>, the North Dakota Supreme Court stated in relevant part the following when answering certified questions posed by this court.

> [T]he plain language of N.D.C.C. § 38-11.1-04 does not preclude a surface owner from recovering what others may be paying to dispose of saltwater in pore space; rather, the price per barrel others are paying for saltwater disposal may provide some

11

> probative evidence of the amount a surface owner maybe damaged for "lost use of and access to the surface owner's land" under N.D.C.C. § 38-11.1-04. We do not speculate on the extent of the evidence a surface owner may proffer to establish lost use of and access to a surface owner's land, because the probative effect and admissibility of proffered evidence is a matter for a trial court's discretion. See F. R. Ev. 401-403 and N.D. R. Ev. 401-403.

Id. at ¶ 30.

The court appreciates that the facts in Mosser are distinguishable from those in the instant case; Mosser concerned compensation for use of pore space whereas the instant case concerns compensation for surface use and damage.  That being said, the court is not inclined to construe Mosser as narrowly as Continental and conclude that it has no application outside of cases involving pore space.  Rather, it views the Supreme Court's statement in Mosser as a recognition of the liberality and broad scope of discovery. With that, the court shall address Continental's relevancy objection.

Relevancy for discovery purposes is broadly construed.  "[A] request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." E.E.O.C. v. Thorman & Wright Corp., 243 F.R.D. 426, 429 (D. Kan. 2007).

The court finds that payments to other landowners *in close proximity* to the Rychners may be probative of values in the area.  Such information could perhaps provide the Rychners  with means of ascertaining the value of their property that was affected by Continental's operations. Cf. Greggory Tank v. Petro-Hunt, L.L.C., No. 1:16-cv-366 (N.D.) (permitting a land owner to testify about two of his leases to extent that he relied upon them as a basis for his opinion regarding the value of his property).  The deposition testimony Anna Theeson, an employee of Kadrmas, bears this out.

Q.    Do you think the amount payed by other developers to landowners for surface use is a good way to determine the amount Continental should pay landowners for surface use?

A.    I have no opinion.  I believe that each negotiation is pertinent to their situation.

Q.    Is there ever a situation where the amount that had been paid by other companies to other landowners would be good way to determine what Continental ought to pay?

A.    Do I believe in those situations?

Q.    Yes.

A.    I don't know what they negotiated.  Was there something special that they needed at the time?  I – I really don't base my negotiations on others.

Q.    So you don't know in – in this situation whether that was a good idea to look at what others had paid?

A.    It is because then Continental has the choice to decide if they want to increase their offers.

Q.    Okay.  So Continental could learn about what others had paid and then make its own decision about whether to use those – shall we call them comparables?  Is that okay?

A.    Certainly.

Q.    Okay.  Could you use those comparables to determine what they should pay to a landowner?

A.    Or they will understand what their competition is and why they are being refused.

Q.    Okay.  Why would it be important for Continental to know what their competition is paying?

A.    That would be up to them.  If you were going to a car dealership, you like to know the price of different cars.  Maybe you need a red station wagon, but it doesn't have to be a Ford.

Q.    Okay. So if I knew what others – other car dealerships are paying for a red station wagon, it would help me to know whether the price on the one I was

13

looking at was correct?

A.     Would a be ballpark, correct.  That's true.

Q.     Okay.  And so transferring that kind of a hypothetical to the situation before us, it would have been helpful to Continental to know what other landowners were being paid by other customers?

A.     Yes, it would have been–it would have been good for Continental to know that.

Q.     Okay.  Would have been good for them to know what the Rychners were showing you with respect to other companies had paid others in the area for surface use?

A.     Yes, Sir.

\* \* \*

Q.     And then you met with [the Rychners] on March 4?

A.     Yes.

Q.     And one of the topics during that meeting was payment for the Carus 2?

A.     And that is what they wanted to talk about, yes.

Q.     And that is what you talked with them about; correct?

A.     Yep.

Q.     And in the course of that meeting, they gave you a bunch of examples where other landowners had been paid by other companies for similar work on their land; is that right?

A.     That is–I believe that is where I got this information, yes.

Q.     And then it says, "It might be helpful to have the list in the file."  Is that your words?

A.     Yes.

Q.     And it would be helpful why?

A.     That way Continental could chose whether they wish to increase their offers

14

or not.

Q.    Okay.  And a comparable would be–might be a good reason for Continental
      to increase their offer?

A.    If we're talking apples and oranges.   Again I wasn't part of these
      negotiations.   I did not know if they had other items involved in their
      settlements.

Q.    Okay.  Under the right circumstances, then, comparables would be a good
      way to determine what Continental should have paid the Rychners?

A.    That is correct.

                                   * * *

Q.     . . . [H]ave there been other projects where you provided Continental with
      comparables in order for them to make a determination on how much to pay
      a surface owner?

A.    I certainly have, yes, sir.

Q.    And that's happened regularly?

A.    Occasionally.  Occasionally.

Q.    Okay.   And do you do your own research, then, in order to provide
      Continental with that information?

A.    Yes.

Q.    That's part of your normal course of business, what you do when you're
      assigned to a project?

A.    Of course.

(Doc. No. 58-20, pp. 55-57).  Whether this information is relevant and admissible at trial is a wholly

different question that the court need not concern itself with at this juncture.  For present purposes,

payment information is probative and discovery of such information cannot be ruled on grounds of

irrelevance.  The court shall next address Continental's protestations to production on grounds of

confidentiality.

15

### b.      Confidentiality

As noted above, Continental asserts that the information sought by the Rychners is confidential and cannot be adequately protected by a protective order.  Specifically, it asserts that the payments it makes to landowners are kept confidential for many reasons, including the desire of some landowners to keep such matters private, that payments to landowners are akin to pricing data (which is considered to be a trade secret in North Dakota), and that it would be harmed should it be required to disgorge such information.

> It is obvious that Continental keeps this type of information confidential as it is not filed with the county recorder.  Otherwise there would be no need for Plaintiffs to request it from Continental.  Continental would be harmed by disclosure of this information as it would allow Plaintiffs and their counsel (who represent landowners throughout western North Dakota during negotiations with Continental) to use that information in future negotiations.  The protective order would not prevent counsel from still having the knowledge even if they could not disclose it.

(Doc. No. 60).

The court appreciates the sensitive nature of the information sought and the natural tension that exists in cases such as this. Continental's concerns are valid.  Nevertheless, they do not pose an insuperable obstacle to production.  The court deals with highly sensitive information on a regular basis and has confidence than an order can be crafted to protect the information at issue in the instant case.

Nonetheless, the court is not ready to conclude that payments made to landowners are entitled to trade secret protection.  Notably, Continental cited no authority for the proposition that such payments are a trade secret.  Rather, they have cited authority for the proposition that its pricing data–how it arrives at a price for the oil it produces–is a trade secret.  To extrapolate this authority to surface damages is simply too much of a stretch.

The court finds Continental's stated concern about opposing counsel's ability to wield

knowledge obtained in the case in future negotiations with other landowners  to be specious.  As Continental points out, counsel for the Rychners has represented others landowners throughout western North Dakota during negotiations with Continental.   It stands to reason that knowledge obtained in their prior representation of landowners informed how they approached negotiations in the instant case and additional knowledge they obtain will inform how they approach such negotiations in the future.  Continental bemoans that negotiations in the future will be more difficult should counsel for the landowners obtain more knowledge of what landowners are being paid.  If the instant case is any indication, the future may have already come to pass. In any event, at the end of the day, Continental is in control over what it offers.

c.      <strong>Scope and Burden</strong>

The requests as originally framed arguably encompass any conceivable payment made by Continental to landowners in Dunn County and thus appear at first blush to be overbroad.  However, the Rychners have clarified or narrowed the scope of their request in their brief.  This is a decent first step.

Having reviewed the record, the court is not persuaded that production in this instance is disproportional or unduly burdensome.  It should not be very difficult to produce available documents pertaining to a small, identifiable group in a limited geographical area  for a narrow span of time.  Consequently, the court is inclined to order the production of payment documents, albeit with some parameters or guide rails.  Accordingly, the court shall require Continental to produce documents that reflect the amount paid  to other landowners for oil well pads, pipelines, and any similar oilfield or industrial surface uses or disturbances on property located in the same township as Rychners property as well as in the eight surrounding townships during the period from January 1, 2018, to October 31, 2019.  Continental need not produce information regarding offers rejected

by other landowners.

**B.      Kadrmas**

**1.      Kadrmas' Response to the Subpoena Duces Tecum**

In December 2019 the Rychners served Kadrmas with a notice of a Rule 30(b)(6) deposition. (Doc. No. 58-11)  They simultaneously served Kadrmas with a subpoena duces tecum in which they demanded that Kadrmas produce the following:

1.      All documents related to any compensation offered or paid to Omer Rychner or Rodney Rychner or Keith Rychner for the Carus 2 Well Location.

2.      All documents related to any compensation offered or paid to Keith Rychner for operations involving the Carus 13-28 Well Location.

3.      All documents related to any compensation offered or paid to Keith Rychner or Rodney Rychner for the Carus 4-7 Wells Location.

4.      All documents that were prepared by Kadrmas and were provided to Keith Rychner or Omer Rychner or Roselyn Rychner or Rodney Rychner.

5.      All documents that Kadrmas received from Keith Rychner or Omer Rychner or Roselyn Rychner or Rodney Rychner.

6.      All documents related to any internal communication involving any Kadrmas owner, employee, or agent concerning the dollar amount of compensation offered to Keith Rychner for the Carus 4-7 Well Location.

7.      All documents related to any internal communication involving any Kadrmas owner, employee, or agent concerning the dollar amount of compensation offered to Keith Rychner for the Carus 13-28 Well Location.

8.      All documents related to any communication between Continental and Kadrmas

concerning the dollar amount of compensation offered to Keith Rychner for the Carus 4-7 Wells Location.

9.    All documents related to any communication between Continental and Kadrmas concerning the dollar amount of compensation offered to Keith Rychner for the Carus 13-28 Well Location.

10.   All communications between Kadrmas and Keith Rychner or Omer Rychner or Roselyn Rychner or Rodney Rychner.

11.   All communications between Kadrmas and Continental related to Keith Rychner or Omer Rychner or Roselyn Rychner or Rodney Rychner.

12.   Documents sent by Matt Kostelecky to Rance Lemieux in response to the request by Rance Lemieux to Matt Kostelecky, contained in the email dated April 25, 2019: "Please pull all correspondence related to these wells."

13.   Documents attached as a "scan" to the email from Ann Theesen to Rance Lemieux, dated July 19, 2018.

14.   The Carus 2-28 well file.

15.   The Carus 4-7 well files.

16.   The Carus 13-28 well file.

17.   All maps that relate to any meeting between Ann Theesen and Omer Rychner or Roselyn Rychner or Keith Rychner..

18.   The "Do Not Contact" list for pipeline negotiations.

19.   Each Notice of Drilling Operations sent by Kadrmas to landowners in Dunn County, North Dakota for the period from January 1, 2018 to June 30, 2019.

(Doc. No. 58-11).  What follows is Continental's and Kadrmas's response:

19

   Defendant Continental Resources, Inc. and non-party B.J. Kadrmas, Inc. Hereby object to the subpoena to B.J. Kadrmas, Inc.  The subpoena demands production of certain documents to be produced at the deposition of B.J. Kardrmas, Inc. on January 24, 2020.

   The following objections are made to the subpoena/amended subpoena: Continental and B.J. Kadrmas, Inc. object to the subpoena in that it is unduly burdensome to a non-party, B.J. Kadrmas, Inc.  Objection is made to all requests for production of information and/or documents to the extent that such requests are repetitive, overbroad, and non calculated to lead to the discovery of admissible evidence.  Objection is made to all requests for production of information and/or documents to the extent that such requests relate to privileged or otherwise non-discoverable information; materials prepared in anticipation of litigation; trade secret or other research, development or commercial information; and any attorney-client privileged information.  Subject to the above objections, B.J. Kadrmas, Inc. will produce responsive documents related to the Rychners' property which does not contain confidential information, attorney-client privileged information, or otherwise privileged information.

((Doc. No. 58-12).

   At the Rule 30(b)(6) deposition, Kadrmas provided electronic copies of certain documents to the  Rychners, along with a privilege log that set forth what it had withheld and why. One of its designated representatives, Matthew Kostelecky, testified at length about the process employed to collect, review, and disseminate the documents in response to the subpoena.

###    2.  General Objections

   The Rychners assert that Kadrmas's general objection to its requests or production did not comport with the specificity requirements of Rule 34, making difficult if not impossible to discern exactly what it was agreeing to provide. They ask the court to direct Kadrmas to remove its general objection and produce all documents it withheld pursuant to its general objection.

   The court find that Kadrmas' general objection does not comport with Rule 34's specificity requirement. Consequently, the court orders it stricken.  Kadrmas shall update its disclosures as necessary.  Whith that being said, the court suspects that the only documents withheld by Kadrmas were the items listed in its privilege/withheld documents log.  The court shall specifically address

these items below.

### 3.      Manner of Production

The Rychners assert that Kadrmas violated the rules of procedure by failing to either produce the documents as they are kept in the ordinary course of business or otherwise specify which documents were responsive to which request.  They further assert that Kostelecky conceded as much his deposition.

> Q.  When you brought the documents with you today you did not produce them as they're kept in the ordinary course of business, did you?
>
> A.  Okay, I mean, I guess I organized them a little bit so they're easier for us to understand and go through today.
>
> Q.  And you didn't label them as responsive to any specific request; correct?
>
> A.  Correct.

(Doc. No. 58-7).

Kadrmas  responds that the Kostelecky's testimony bears out that Kadrmas produced wells files as they are stored in the usual course.

> Q.  (MR. ARMSTRONG CONTINUING) If we take, for example, the subpoena, Exhibit 1, let's just start with Number 1 – you see Production Number 1.  Do you have a folder in your office that has – is labeled "compensation offered or paid to Omer Rychner"?
>
> A.  No.
>
> Q.   Where would information like that be kept in the ordinary course of your business?
>
> A  The well folder.
>
> Q.  And did you produce the well folders in response to the subpoena today?
>
> A.  Yes.
>
> Q.  And would that be same for all of the Numbers 1 through 6, you don't have

folders like what are described in 1 through 6 in your office?

A.  No, we don't have folders labeled like that.  No.

Q.  And so where would the information from those be found?

A.  It's in the well folder.

Q.  How about for folders number – or requests 7 through 11, do you have folders with those names within your office?

A.  We have well folders named Carus 13-28, 4 through 7 and stuff but not worded like this.

Q.  And so the information responsive to those would be found in where?

A.  The well file.

Q.  And that's were they're stored during the ordinary course of your business?

A.  Yes.

Q.  And then you also discussed they could be in email communications.

A.  Yes.

Q.  For Number 12, did you do that as specific request?

A.  Yeah.  I thought that was a more specific request, yes.

Q.  And were you able to respond to that specifically in the production today?

A.  Yes.

Q.  With Number 13, did you view that as a specific request.

A.  Yes.

Q.  And were you able to produce that specifically in response to Number 13?

A.  Yes.

Q.  And that included within the production?

A.  Yes.

Q.  With Number 14, that was a more specific request; is that fair?

A.  Yes.

Q.  And did you produce the entire Carus 2-28 well file?

A.  Yes.

Q.  And is that produced in its native format?

A.  Yes.

Q.  So if we look at the screen, which would be–what would show on the production, it says Carus 2-28H1 electrical; correct"

A.  Yes.

Q.  And that is how it looks on your server?

A.  Yes, minus the 14 dash.  Yes.

Q.  And would that be same for Numbers 15 and 16.

A.  Yes.

Q.  For Number 17, first off did that request any specific map?

A.  No.

Q.  If you were asked to produce the map that was talked about in Exhibit 3, would you have endeavored to produce that map?

A.  If that was specifically asked for, yes.

Q.  Do you have a folder that says maps that relate to any meetings between Ann Theesen and Omer Rychner or Roseyln Rychner or Keith Rychner?

A.  No.

Q.  Where do you store maps in your files?

A.  Within the well files or project files.

Q.  With Number 18, was that a specific request?

A.  Yes.

Q.  And did your provide with that what you understand to be the do no contact list as it would be stored within your office?

A.  Yes.

(Id.).  As for emails, Continental asserts that Kadrmas endeavored to produce them in a manner that approximates as close as possible how they are kept in the usual course.

"As provided for in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Fed. R. Civ. P. 34(c).  "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  "A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand." Fed. R. Civ. P. 45(e)(1)(A).

Having reviewed the record, the court finds the manner of Kadrmas's production comports with the requirements of federal rules.  First, it appears to the court that Kadrmas has produced well files as they are kept in the ordinary course. These well filed contain document's responsive to the Rychners' various requests.  Although the format in which Kadrmas may have kept these records in the ordinary course of business may not be ideal, it does not undermine the usefulness of the production.  With reasonable effort, the Rychners should be able to discern which documents in the well files are  responsive to which requests.  Second, with respect to the production of emails, it is apparent that emails identified as responsive following a search of Kadrmas's servers were copied into folders organized by well.  This is arguably the organization that Kostelecky was referring in the testimony cited by the Rychners.  While imperfect, this production suffices for purposes of Rule

24

34 as it apparent the emails were produced in a form closely approximating the manner in which they were kept in the usual course. Consequently, Kadrmas need not reproduce its records.

### 4.    Privilege/Withheld Documents Log

Attached to the Rychners' motion is a copy of a Kadrmas's "Privilege/Withheld Documents Log" dated February 3, 2020.   (Doc. No. 58-16)**.**  The first two entries on the log–notes from Kostelecky to counsel–were withheld on the grounds of attorney-client privilege. (Id.).   The remaining entries on the log–email communications, notices, status maps, line lists, and/or attachments–were withheld on the grounds that they contained confidential commercial information related to third-parties as opposed to Rychners, did not contain information relating to the Rychners' claims, and/order were  not calculated to lead to the discovery of admissible evidence  (Id.)

 The Rychners asserts that the bulk of the documents listed on Kadrmas's privilege log were improperly withheld.  Specifically, they assert that Kadrmas improperly withheld documents on grounds of confidentiality as opposed to privilege and otherwise failed to articulate its basis for withholding certain documents with the requisite specificity.  They ask the court to order the production of all of the documents listed on the privilege log save documents identified or described as  attorney/client notes. They also ask the court to order the production of unredacted versions of redacted documents produced by Kadrmas.

Kadrmas responds that the items listed in the log are not discoverable, incorporating by reference Continental's assertion that the Rychners are not entitled to offers or payments made to other landowners.  It also asks the court to review the documents in camera to determine whether production is necessary.

In their reply, the Rychners hone in on the drilling notices withheld by Kadrmas.  Stressing that the drilling notices contain the initial offers made to surface owners, the assert that "they are

entitled to discover Continental's offer amounts [to other surface owners] and the reasoning behind them."

The court is not persuaded that the Rychners require documentation regarding how Continental formulated their offers to other surface owners or what they offered to other surface in order to prepare their experts and prove up their claim for damages.   The Rychners have the ability to examine Continental about how it is calculating damages.   The ability coupled with the information regarding actual payments made by Continental to other surface owners in the vicinity of the Rychners should be more than sufficient.

## IV.   CONCLUSION

The Rychners' Motion to Compel  (Doc. No. 57) is **GRANTED IN PART AND DENIED IN PART**.  The court strikes Continental's and Kadrmas' general objections. Neither Continental nor Kadrmas needs to reorganize and reproduce the documents they have already provided the Rychners.  However, Continental and Kadrmas shall produce documents that reflect the amount paid to other landowners for oil well pads, pipelines, and any similar oilfield or industrial surface uses or disturbances on property located in the same township as Rychners' property as well as in the eight surrounding townships during the period from January 1, 2018, to October 31, 2019.  The parties will prepare and submit for the court's review by June 7, 2021, a joint proposed protective order setting forth how confidential materials will be handled. The Rychners' Motion for Hearing (Doc. No. 59) is deemed **MOOT**.  The parties shall bear their own costs and fees associated with these motions.

**IT IS SO ORDERED.**

Dated this 1st day of June, 2021.

/s/ Clare R. Hochhalter
Clare R. Hochhalter, Magistrate Judge
United States District Court