IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Keith Rychner, Omer Rychner, and Roselyn Rychner,<br><br>    Plaintiffs,<br><br>vs.<br><br>Continental Resources, Inc.,<br><br>    Defendant. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SECOND MOTION TO COMPEL**<br><br>Case No.: 1:19-cv-071 |

Before the court is the Rychners' second motion to compel discovery (Doc. No. 75) and request for hearing on the motion (Doc. No. 81). For the reasons that follow, the Rychners' second motion to compel is granted in part and denied in part. The Rychners' request for hearing is deemed moot.

I.  **BACKGROUND**

Keith Rychner ("Keith") and Omer Rychner ("Omer") each served Continental Resources, Inc. ("Continental") with Interrogatories and Requests for Production in November 2019. Continental served its written responses to Keith and Omer respectively in January 2020. Attached to its written responses were discs containing electronic copies of certain documents.

In December 2019, the Rychners served B.J. Kadrmas, Inc. ("Kadrmas"), a non-party field agent for Continental, with a subpoena duces tecum and notice of a Rule 30(b)(6) deposition. They requested nineteen categories of documents.

In January 2020, Kadrmas' owner, Matthew Kostelecky ("Kostelecky"), appeared for the Kadrmas Rule 30(b)(6) deposition and produced a disc containing electronic copies of documents. Kostelecky testified that Kadrmas produced the entire well files requested by the Rychners and that

1

the only documents Kadrmas withheld from production were the Notices of Drilling Operations. In February 2020, the Rychners deposed Corey Schmitt, a project manager with Kadrmas who worked on Continental projects from 2005 to 2019.

In February 2020, Kadrmas' attorney served the Rychners with a privilege log. The first two entries on the log–notes from Kostelecky to counsel–were withheld on the grounds of attorney-client privilege. (Doc. No. 58-16). The remaining entries on the log–email communications, notices, status maps, line lists, and/or attachments–were withheld on the grounds that they contained confidential commercial information related to third-parties as opposed to the Rychners, did not contain information relating to the Rychners' claims, and/or were not calculated to lead to the discovery of admissible evidence. (Id.).

On June 30, 2020, the Rychners filed a Motion to Compel. (Doc. No. 57). Taking issue with Continental's responses to their interrogatories and production requests, Kadrmas' objections to their subpoena duces tecum, and the manner of Continental's and Kadrmas' production, they sought an order from the court compelling Continental and Kadrmas to supplement their responses, reorganize what had already been produced, and to otherwise produce the requested documents.

On June 1, 2021, the court issued an order that granted in part and denied in part the Rychners' motion. (Doc. No. 72). In its order, the court first struck Continental's and Kadrmas' general objections to the Rychner's discovery requests and subpoena duces tecum and directed Continental and Kadrmas to supplement their responses as necessary. The court did not require Continental and Kadrmas to reorganize what they had already produced, however. Next, reasoning that payments to other landowners in close proximity to the Rychners may be probative of values in the area and could perhaps provide the Rychners with means of ascertaining the value of their

property that was affected by Continental's operations, the court directed Continental to produce documents that reflected actual amounts paid to other landowners for oil well pads, pipelines, and any similar oilfield or industrial surface uses or disturbances on property located in the same township as the Rychners' property as well as in the eight surrounding townships for the period of January 1, 2018, through October 31, 2019. The court did not require Kadrmas and Continental to produce documentation regarding how Continental formulated its offers to these other surface owners or offers rejected by these other surface owners. Finally, the court directed the parties to prepare and submit a protective order. The parties responded by agreeing to abide by the protective order already in place.

After this court's ruling on the first motion to compel, Continental served supplemental responses to Keith's and Omer's requests. (Doc. Nos. 76-1 and 76-2). Kadrmas served amended objections to the subpoena duces tecum. (Doc. No. 76-3). It also produced documents with redactions for the time period requested by Keith– January 1, 2018 to October 21, 2019, but not for the time period requested by Omer–June 1, 2011, to May 31, 2012.

In August 2021, Keith and Omer served Continental with a second set of interrogatories and documents requests. (Doc. Nos. 76-4 through 76-7). Therein they asked Continental to specify what surface damages it believes that Keith and Omer have sustained, to identify persons with knowledge of the surface damages it believes that Keith and Omer have sustained, and to produce all documents discussing, referring, or relating to the damages it believed that Keith and Omer have sustained. Continental responded that it had not specifically calculated what it believes the Rychners' damages to be and is waiting on the Rychners to first identify their claims for damages and the basis for them as they ultimately have the burden of proof.

Keith and Omer took issue with Kadrmas' amended objections to the subpoena duces tecum and Continental's supplemental responses to their respective first sets of interrogatories and requests for documents. They also took issue with Continental's responses to their respective second sets of interrogatories and request for production of documents.

The parties met and conferred in an effort to resolve their discovery dispute without court involvement but were unsuccessful. They subsequently participated in a conference call with the court but were unable to reach an agreement. Consequently, the court authorized the Rychners to file a second motion to compel.

On September 3, 2021, the Rychner's filed a second motion to compel. (Doc. No. 75). They seek an order requiring Continental and Kadrmas to: produce the payment documents sought by Omer in his first set of production requests; remove redactions from the payment documents they have produced to date; produce documents that they assert are Continental and Kadrmas are continuing to withhold from them improperly; and produce all documentation regarding Continental's offers to other surface owners. Their motion has been fully briefed and is ripe for the court's consideration.

## II.  APPLICABLE LAW

A brief summary of rules and law governing discovery is contained in the court's order disposing of the Rychner's first motion to compel. (Doc. No. 72).

## III.  DISCUSSION

### A.  Production of Documents Responsive to Omer's First Set of Discovery Requests

In their first set of discovery requests to Continental, the Rychners requested Continental produce documents showing its payments to other landowners. Because Keith received the Notice

of Drilling Operations from Continental for the well pads on his land in 2018, Keith requested documents for the period of June 1, 2018 to October 31, 2019. Because Omer received the Notice of Drilling Operations from Continental for the well pad on his land in 2011, Omer requested documents for the period June 1, 2011 to May 31, 2012.

The court's order granting in part and denying in part the Rychner's first motion, to compel contained a scrivener's error. It conflated the periods for which Omer and Keith had both requested and ordered Continental to produce payment documents from the period of June 1, 2018 to October 31, 2019. The court now orders Continental to produce documents from June 1, 2011, until May 31, 2012. The court shall move on to address redacted documents produced by Continental.

**B.    Redactions to Documents Produced Pursuant to the Court's Order on the Rychners First Motion to Compel**

In response to the court's ruling that Continental and Kadrmas must produce documents regarding payments to other surface owners in what amounts to nine townships in Dunn County, North Dakota, Continental produced documents from approximately 35 payments. In so doing, it designated all of these documents as "confidential" under the Protective Order.

The Rychners complain that Continental "redacted information on documents from its payment for a saltwater disposal well." (Doc. No. 76). They advise that information redacted from one of the documents appears to address the per-barrel rate Continental paid to dispose of saltwater into a disposal well on another surface owner's property. They cannot ascertain what the other redactions concern.

The Rychners assert that Continental's redactions were unnecessary and unwarranted given the court's ruling on their first motion to compel and Continental's designation of the produced documents as confidential under the Protective Order. They further assert that, to justify their

5

redactions, Continental has misrepresented rulings issued by the court in this district.

> [A]t the recent Rule 37 conference, Continental's attorney argued that the pore space within the saltwater well at issue in its documents is severable from the surface estate, with the result that the per-barrel rate it paid is merely a royalty and was redacted because it is not relevant. But Continental and its attorneys already know that this Court has rejected its argument that pore space is severable from the surface estate. In <u>Continental v. Rick Fisher and Rosella Fisher</u>, 1:18-cv-00181 (an active case in this Court involving surface use payments by Continental to Fishers, who own the land where Continental constructed its saltwater well) Continental argued that it did not need to pay the Fishers for its disposal into the well. It argued the Fishers do not own the pore space and need not be paid based on a specious reading of language in a prior order from Judge Hovland. In his order on cross-motions for summary judgment, Magistrate Miller reminded Continental, in no uncertain terms, that pore space is, indeed, part of the surface estate in North Dakota. 1:18-cv-0018 Doc. No. 61, p. 9 ("In advancing the argument, Continental shamelessly takes out-of-context Judge Hovland's [language quoting from <u>Mosser v. Denbury Resources, Inc., 2017</u> ND 169, ¶ 24]:. . . "Pore space, which is no longer severable from the surface estate in North Dakota, is an estate in land much like the mineral estate." Here, Continental again shamelessly asserts that pore space is severable from the surface estate, this time to justify its redaction of payment information from documents it has been specifically ordered to produce. Continental must produce unredacted versions of its payment documents.

(<u>Id.</u>).

Continental does not dispute that, in the documents it produced in accordance with court's order, it redacted information regarding its payments to other surface owners for its saltwater disposal. Rather, it takes the position that is redactions were proper as the payments it made on a per-barrel basis or otherwise for their disposal of saltwater in other surface owner's pore space have no relation to the Rychners' claims and are outside the scope of the court's order.

In its order addressing the Rychner's first motion to compel, the court required Continental and Kadrmas to "produce documents that reflect the amount paid to other landowners for oil well pads, pipelines, and any similar oilfield or industrial surface uses or disturbances to property." (Doc. No. 72). In simpler terms, the court qualified what kinds of documents Continental and/or Kadrmas

6

were to produce. The court issued its order with the intent that the production of payment documents would encompass activities that were the same or similar in nature to those performed on the Rychner's property. If the court had intended to require Continental and Kadrmas to produce documents for any and all payments for surface damages regardless of the activity or source of damages, then it would have simply said so.

As Continental has correctly pointed out, this is not a case concerning pore space and payments made for its use. There is nothing in the record to suggest that saltwater disposal wells were constructed by Continental on the Rychners' property much less that Continental used saltwater disposal wells constructed by others on the Rychner's property to dispose of saltwater or is otherwise occupying the Rychners' pore space with its saltwater. The Rychners are not seeking to recover for Continental's use of their pore space for saltwater disposal. Thus, the court is at a loss as to how payments made to other surface owners for their pore space would be of any help to the Rychners in this case.

The court finds that the amounts paid by Continental to other surface owners for their pore space are unlikely to lead to the discovery of admissible evidence in this action. Consequently, the court will not require Continental to remove redactions insofar as they pertain to payments it made on a per barrel basis or otherwise to other surface owners for the use of their pore space.

    **C.**    **Supplemental Responses to the First Sets of Discovery Requests and Amended Objections to the Subpoena Duces Tecum**

In its response to the Rychners' First Motion to Compel, Continental represented that it had not withheld documents pursuant to its general objections to Keith's and Omer's respective discovery requests. As noted above, the court struck Continental's general objections and directed Continental to update its disclosures as necessary. In so doing it made the following observation:

"If what Continental has represented is true, that it has not withheld any documents pursuant to its general objection, then its work is done as the objection was superfluous from the start." (Doc No. 72).

After the court issued its order, Continental supplemented its responses to the Rychners' respective discovery requests.

In their current motion, the Rychners' take issue with Continental's supplemental responses to Keith's and Omer's first, fourteenth, sixteen, seventeenth, and twentieth requests for production. These requests along with the original and supplemental answers to them are reproduced below.

>    REQUEST FOR PRODUCTION NO. 1: All statements made by parties or non-parties which are related to the above action or its subject matter. For purpose of this document request, a statement is a written statement signed or otherwise adopted or approved by the person making it, and, a stenographic, mechanical, electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.
>
>    ANSWER: Subject to and without waiving the foregoing objections, Continental produces any responsive documents herein.

(Doc. No. 58-6).

>    [SUPPLEMENTAL] ANSWER: To the extent Continental understands this request, it is not in possession of any such statements. Any such statements would be included in the documents previously produced by Continental Resources, Inc. on January 13, 2020, and/or by B.J. Kadrmas, Inc. in response to Plaintiffs' subpoena.

(Doc. No. 76-1).

>    REQUEST FOR PRODUCTION NO. 14: Continental's file regarding the Carns 4-7.
>
>    ANSWER: This request is objected to as not calculated to lead to the discovery of admissible evidence, overbroad, and unduly burdensome to the extent it seeks drilling and production information. It is further objected to the extent it seeks attorney-client privileged information. Subject to and without waiving the foregoing objections, see the documents provided herewith.

(Doc. No. 58-6).

    [SUPPLEMENTAL] ANSWER: This request is objected to as not calculated to lead to the discovery of admissible evidence, overbroad, and unduly burdensome to the extent it seeks drilling and production information. It is further objected to the extent it seeks attorney-client privileged information. Subject to and without waiving the foregoing objections, responsive documents were produced by Continental Resources, Inc. on January 13, 2020, and/or by B.J. Kadrmas, Inc. in response to Plaintiffs' subpoena. Drilling and production documents as well as drilling order title opinions were not provided based on the objection to this request.

(Doc. No. 76-1).

    REQUEST FOR PRODUCTION NO. 16: All documents related to the Carns 24-28H.

    ANSWER: This request is objected to as not calculated to lead to the discovery of admissible evidence, overbroad, and unduly burdensome to the extent it seeks drilling and production information. It is further objected to the extent it seeks attorney-client privileged information. Subject to and without waiving the foregoing, see the documents provided herewith.

(Doc. No. 58-6).

    [SUPPLEMENTAL] ANSWER: This request is objected to as not calculated to lead to the discovery of admissible evidence, overbroad, and unduly burdensome to the extent it seeks drilling and production information. It is further objected to the extent it seeks attorney-client privileged information. Subject to and without waiving the foregoing objections, responsive documents were produced by Continental Resources, Inc. on January 13, 2020, and/or by B.J. Kadrmas, Inc. in response to Plaintiffs' subpoena. Drilling and production documents as well as drilling order title opinions were not provided based on the objection to this request.

(Doc. No. 76-1).

    REQUEST FOR PRODUCTION NO. 17: All documents related to the Carus 13-28H Well.

    ANSWER: This request is objected to as not calculated to lead to the discovery of admissible evidence, overbroad, and unduly burdensome to the extent it seeks drilling and production information. It is further objected to the extent it seeks attorney-client privileged information. Subject to and without waiving the foregoing, see the documents provided herewith.

(Doc. No. 58-6).

> [SUPPLEMENTAL] ANSWER: This request is objected to as not calculated to lead to the discovery of admissible evidence, overbroad, and unduly burdensome to the extent it seeks drilling and production information. It is further objected to the extent it seeks attorney-client privileged information. Subject to and without waiving the foregoing objections, responsive documents were produced by Continental Resources, Inc. on January 13, 2020, and/or by B.J. Kadrmas, Inc. in response to Plaintiffs' subpoena. Drilling and production documents as well as drilling order title opinions were not provided based on the objection to this request.

(Doc. No. 76-1).

In addition to Continental's supplemental responses to Keith's and Omer's aforementioned requests for production, the Rychners take issue with Kadrmas' amended objections to subpoena duces tecum, specifically request numbers 11, 17, and 18.

> 11. Please produce all communications between Kadrmas and Continental related to Keith Rychner or Omer Rychner or Roselyn Rychner or Rodney Rychner.
>
> [Amended] Objection: This request is objected to the extent it is overbroad and vague with respect to "all" communication and "related to." To the extent B.J. Kadrmas, Inc., understand the request, all documents have been provided and no information has been withheld in response to this request.
>
> 17. Please produce all maps that relate to any meeting between Ann Theesen and Omer Rychner or Roselyn Rychner or Keith Rychner.
>
> [Amended] Objection: This request is objected to the extent it is overbroad and vague with respect to "all maps that relate to any meeting." To the extent that B.J. Kadrmas Inc. understands the request, any such maps are included in the well folders previously provided and no documents were withheld in response to this request.
>
> 18. Please produce the "Do Not Contact" list for pipeline negotiations.
>
> [Amended] Objection: This request is objected to the extent it seek information not calculated to the discovery of admissible evidence with respect to Plaintiffs' allegations in the Complaint. B.J. Kadmras has already produced the "do not contact" list to the extent it exists within B.J. Kadrmas Inc. With the tract notes related to other properties redacted. Pursuant to the Court's Order Granting in Part and Denying In Part Plaintiffs' Motion to Compel, provided herewith are documents that reflect the amounts paid to other landowners for oil well pads, pipelines, and any

> similar oilfield or industrial surface uses or disturbances on property located in the same townships as Rychners' property as well as in the eight surrounding townships during the period from January 1, 2018 to October 31, 2019. These documents are Continental Resource, Inc.'s property and are deemed "Confidential" as designated in accordance with the Stipulated Protective Order (Doc. No. 39) by Continental Resources, Inc.

(Doc. No. 76-3).

The Rychners take issue with the spirit and substance of Continental's supplemental answers. First, they submit that Continental would not have needed to substantively change its answers if it was being truthful when previously representing that it had not withheld any documents under its general objections. Second, with respect to Continental's supplemental answer to request number one, they assert that Continental's belated claim that it may not now understand their request is evasive and allows it to continue to improperly withhold documents. Third, with respect to Continental's supplemental answers to request numbers 14, 16, and 17, they assert that Continental's reiteration of its general objection with additional objection on grounds of attorney-client privilege is evasive and allows it to improperly withhold some documents and to simply not identify others in its well file beyond drilling and production documents and title opinions. In an effort to illustrate what they are presently struggling with, they contrast Kadrmas' Rule 30(b)(6) deposition testimony where Kadrmas produced the entirety of Continental's entire well files with Continental's statement in its supplemental answer that "[d]rilling and production documents as well as drilling order title opinions were not provided based on the objection to this request."

The Rychners also take issue with the spirit and substance of Kadrmas's amended objection to request number 11 in the subpoena duces tecum. Specifically, they assert that Kadrmas' representation at its Rule 30(b)(b) deposition that it understood Request 11, performed a key word search, identified responsive documents in its file, and produced them contradicts Kadrmas'

11

statement in its amended objection that it has produced documents to the extent that it understands the Rychners' request.

As support for their assertion that Continental and Kadrmas are wrongfully withholding at least some documents, the Rychners represent that well files produced by Continental and/or Kadrmas did not contain weekly update reports, spreadsheets, or maps that Schmidt had testified at his deposition to having placed in the project files. They also represent that emails concerning Continentals' damage calculations and about which Schmitt testified in his deposition were not among the documents produced by Continental and Kadrmas. They then seemingly backtrack, acknowledge that some of the aforementioned documents and emails may have been among the materials identified by Continental in its privilege log, point out that the privilege log was produced after Kadrmas' Rule 30(b)(6) deposition, and assert that Continental's use of a privilege log was inappropriate and the documents listed in the privilege log must be produced.

> Continental might reply that it has already identified the emails and weekly reports containing the spreadsheets in Kadrmas' "Privilege/Withheld Documents Log," that the documents are irrelevant, and that this Court, accordingly, ruled it need not produce those documents. As a preliminary matter, while it is true that the privilege log identifies a smattering of emails and weekly reports, it is far from clear that the documents listed in the privilege log include the same, much less all, of the emails and weekly update reports that Schmitt discussed during his deposition. Thus, Continental must produce the documents in the privilege log, if for no other reason, so that the Rychners may reconvene Schmitt's deposition to show him the withheld documents and examine him as to the relationship, if any, between the documents in the privilege log and the documents he testified about earlier. More importantly, given Schmitt's testimony that the emails and weekly update reports, including the spreadsheets, contain actual payment information, Continental can no longer reasonably argue that the emails and weekly update reports, including the spreadsheets, are not relevant. This is not an appropriate use of a privilege log.

(Doc. No. 76).

In response, Continental states that it changed its responses to comply with this court's order and to disclose information the court required. It further asserts that the remaining materials about

12

which the Rychners are complaining do not reflect "the amount paid." In so doing they note that the court previously ordered that it was not required to produce information regarding offers rejected by other landowners or how it formulated offers.

Continental's use of the privilege log was an issue addressed by the court as follows in its order on the first motion to compel.

> Attached to the Rychners' motion is a copy of a Kadrmas's "Privilege/Withheld Documents Log" dated February 3, 2020. (Doc. No. 58-16). The first two entries on the log–notes from Kostelecky to counsel–were withheld on the grounds of attorney-client privilege. (Id.). The remaining entries on the log–email communications, notices, status maps, line lists, and/or attachments–were withheld on the grounds that they contained confidential commercial information related to third-parties as opposed to Rychners, did not contain information relating to the Rychners' claims, and/or were not calculated to lead to the discovery of admissible evidence (Id.).
> The Rychners assert that the bulk of the documents listed on Kadrmas's privilege log were improperly withheld. Specifically, they assert that Kadrmas improperly withheld documents on grounds of confidentiality as opposed to privilege and otherwise failed to articulate its basis for withholding certain documents with the requisite specificity. They ask the court to order the production of all of the documents listed on the privilege log save documents identified or described as attorney/client notes. They also ask the court to order the production of unredacted versions of redacted documents produced by Kadrmas.
> Kadrmas responds that the items listed in the log are not discoverable, incorporating by reference Continental's assertion that the Rychners are not entitled to offers or payments made to other landowners. It also asks the court to review the documents in camera to determine whether production is necessary.
> In their reply, the Rychners hone in on the drilling notices withheld by Kadrmas. Stressing that the drilling notices contain the initial offers made to surface owners, the assert that "they are entitled to discover Continental's offer amounts [to other surface owners] and the reasoning behind them."
> The court is not persuaded that the Rychners require documentation regarding how Continental formulated their offers to other surface owners or what they offered to other surface in order to prepare their experts and prove up their claim for damages. The Rychners have the ability to examine Continental about how it is calculating damages. The ability coupled with the information regarding actual payments made by Continental to other surface owners in the vicinity of the Rychners should be more than sufficient.

(Doc. No. 72).

Continental's and Kadrmas' use of the "to extent that [it] understands the request" is not particularly helpful and seems at first blush to be an unnecessary qualifier. However, the court does not court ascribe the same nefarious intent to their usage of this phrase as the Rychners.

The court reiterates that it will not require Continental to produce documents regarding how it formulated its offers to other surface owners or what they offered to other surface owners. Consequently, all that Continental needs to produce with respect to other surface owners are the amounts it paid to other surface owners in the geographical area defined by the court's previous order for the same or similar activities as those it performed on the Rychners' property.

If it has not already done so, Continental, or Kadmras on Continental's behalf, shall produce the well files in their entirety save drilling and production documents, title opinions, attorney-client communications, and documents regarding how it formulated its offers to other surface owners or what it offered to other surface owners.

The Rychners were told by Kadrmas's corporate representative at Kadrmas' Rule 30(b)(6) deposition that Kadrmas had produced the well file in its entirety save drilling and production documents and title opinions. At a subsequent deposition, Kadrmas' landman testified that he had prepared spreadsheets and reports that he circulated with his superiors and which he placed in the well files. The well files provided by Kadrmas to the Rychners did not contain the landman's spreadsheets or reports. Following, the deposition, Rychners received a privilege log in which Continental identified documents it was withholding, e.g., email communications, notices, status maps, line lists, and/or attachments, on the grounds that they contained confidential commercial information related to third-parties as opposed to Rychners. This sequence of events only fed the Rychners' distrust of Continental.

If the well files contained spreadsheets or reports by Schmitt or maps, then Continental

and/or Kadmras shall provide them to the Rychners if they have not already done so. No payment information should be redacted from these documents unless it refers to other surface owners outside the geographical area defined in the court's previous order or it pertains to saltwater disposal. If Continental is otherwise in possession of email communications, notices, status maps, line lists, status reports, and/or attachments that concern activities performed on the Rychner's property or in which the Rychners and/or their property are a subject of discussion, it shall produce these materials to the Rychners if it has yet to do so. Again, no payment information should be redacted from these documents unless it refers to other surface owners outside the geographical area defined in the court's previous order or it pertains to saltwater disposal.

### D.     Discovery of Continental's Offers to Other Landowners

In August 2021, Keith served Continental with a second set of interrogatories and document requests asking Continental to specify Keith's damages, identify persons with knowledge of Keith's damages, and produce documents related to Keith's damages. The requests and responses were as follows:

> INTERROGATORY NO. 20: Specify in all possible detail the damages you believe Keith Rychner sustained for lost land value, lost use of and access to, and lost value of improvements to the Property as a result of the drilling and operation of the Carus 2 and Carus 4-7 wells.
>
> ANSWER: Continental has not specifically calculated the amount of damages it believes Keith Rychner sustained for lost land value, lost use of and access to, and lost value of improvements to the Property as a result of the drilling and operations of the Carus 2 and Carus 4-7 wells. Continental has attempted to gather information through written discovery and a deposition of Keith Rychner, but Keith Rychner has not identified the amount of damages he claims to date for these categories of damages, instead indicating he will rely upon experts to calculate damages. To date, no such experts have been disclosed. Continental made offers to Keith Rychner or his predecessor which it believes exceeded the amount of any lost land value, lost use of and access to, and lost value of improvements to the Property. Continental's belief that its offers exceeded these values is based on publicly available information, including property tax information available through the Dunn County website and

agricultural information from the North Dakota Farm Management website (www.ndfarmman-gement.com), which is the type of information Continental considered when making its offers. At times, Continental has also considered the North Dakota County Rents & Prices Annual Survey from the North Dakota Department of Trust Lands (https://www.Jand.ncl.gov/resources/north-dakota-county-rents-prices-annual survey). As a result, a determination of damages Continental believes Keith Rychner has sustained for lost land value, lost use of and access to, and lost value of improvements to the Property involves further analysis, including the possibility of expert analysis, that is not completed. Expert witnesses will be disclosed as required by the Federal Rules of Civil Procedure within any deadlines set by the Court.

INTERROGATORY NO. 21: Identify each person with knowledge of the damages you believe Keith Rychner sustained for lost land value, lost use of and access to, and lost value of improvements as a result of the drilling and operation of the Carus2 and Carus 4-7 wells and provide a summary of their specific knowledge.

ANSWER: See answer to Interrogatory No. 20, which is incorporated herein. Depending on what Keith Rychner identifies as claimed damages he sustained, the individuals identified in the interrogatories, production of documents, and depositions occurring in this case may have some knowledge regarding his claimed damages, but until Keith Rychner identifies what damages he claims and the basis for them it is impossible to answer this interrogatory more specifically. To the extent the response to this interrogatory involves an expert, expert witnesses will be disclosed as required by the Federal Rules of Civil Procedure within any deadlines set by the Court.

REQUEST FOR PRODUCTION NO. 24: All documents discussing, referring, or relating to the damages you believe Keith Rychner sustained for lost land value, lost use of and access to, and lost value of improvements to the Property as a result of the drilling and operation of the Carus 2 and Carus 4-7 wells.

ANSWER: Continental has not specifically calculated the amount of damages it believes Keith Rychner sustained for lost land value, lost use of and access to, and lost value of improvements to the Property. Until such time as Keith Rychner identifies what his claimed damages are and the basis for them, it is impossible for Continental to identify all documents discussing, referring, or relating to the damages it believes Keith Rychner sustained. As a result, a determination of damages Continental believes Keith Rychner has sustained involves further analysis, including the possibility of expert analysis, that is not completed. Expert witnesses will be disclosed as required by the Federal Rules of Civil Procedure within any deadlines set by the Court. In addition to the documents already produced by Continental or B.J. Kadrmas, Inc., including the documents produced by Continental in response to Omer Rychner's second set of interrogatories and requests for production of documents, Continental is producing herewith publicly available information similar

>   to the type of information it would have considered at or around the time of its offers
>   from the Dunn County and North Dakota Farm Management web sites.

(Doc. No. 76-5).

In August, 2021, Omer also served Continental with a second set of interrogatories and document requests asking Continental to specify Omer's damages, identify persons with knowledge of Omer's damages and produce documents related to Omer's damages. (Doc. No. 76-6). Continental's responses were the same as for Keith, except for the names of the wells involved. (Doc. No. 76-7).

The Rychners assert that, in answering Keith's and Omer's second set of discovery requests, Continental ostensibly retreated from its previous position that offers to landowners were confidential and unrelated to its calculation of the Rychners' damages, conceded that its damage calculations are based on how its employees calculate offers and are therefore relevant, produced some documents regarding offers calculations in anticipation that its employees may have to testify about damages at trial, and in so doing opened the door for further discovery regarding all their offers to landowners. They demand that Continental now produce all documents related to offers it made to landowners for compensation of surface damages.

In response, Continental acknowledges that it did has produced all documents related to its offers to the Rychners. However, it hastens to add that its production of documents is not a concession regarding their ultimate relevancy and it has contested and will continue to contest their admissibility at trial. Second, it asserts that offers it made to other landowners for other projects are irrelevant and beyond the scope of this litigation. Third, it asserts that the Rychners are endeavoring to shift the burden of proof by asking it to identify their statutory damages. Fourth it asserts that, when making its offer as required by statute to the Rychners, it was not required to precisely

calculate the Rychners' statutory damages and it is far from certainty at this point that its employees will testify at trial.

In reply, the Rychners assert: "Continental admitted its employees use offer calculations to determine landowner damages and, most significantly, produced documents related to its calculations. This opens the door to Rychners' discovery of other documents related to Continental's offer calculations." (Doc. No. 78).

The notion that offers are used to calculate damage strikes the court as odd. It would seem more logical that a damage calculation would form the basis, in whole or in part, of an offer. In any event, if Continental has produced some documents regarding its offers to the Rychners, then perhaps Continental has opened the door to discovery of all of the documentation regarding its offers to the Rychners. This is not what the Rychners are asserting, however. They are asserting an entitlement to the documents that contain its offers to all other landowners in the geographical region defined in the court's previous order. The court is not persuaded that, by producing documentation regarding its offers to the Rychners, Continental has "opened the door" as wide as the Rychners have suggested and that documentation regarding offers to other landowners is now fair game.

There is no dispute that Continental produced documents regarding its offers to the Rychners. If Continental uses offer calculations to determine landowner damages, then the Rychners are in possession of the documents that Continental will use in their damage calculations.

## IV.    CONCLUSION

The Rychners' second motion to compel (Doc. No. 75) is **GRANTED IN PART AND DENIED IN PART**. Continental and Kadrmas shall produce documents that reflect the amount paid to other landowners for oil well pads, pipelines, and any similar oilfield or industrial surface uses

or disturbances on property located in the same township as Omer's property as well as in the eight surrounding townships during the period of June 1, 2011, until May 31, 2012. The court will not require Continental or Kadmras to remove redactions regarding payments to other landowners for pore space. The court will not require Continental or Kadrmas to produce documents related to the calculation of offers to the other landowners. Continental and/or Kadrmas shall provide the Rychners with the copies of the documents that Schmitt had testified to placing in the wells files. Continental and Kadrmas shall otherwise produce email communications, notices, status maps, line lists, status reports, and/or attachments that concern activities performed on the Rychners' property or in which the Rychners and/or their property are a subject of discussion. The Rychners' request for a hearing (Doc. No. 81) is deemed **MOOT**.

    **IT IS SO ORDERED.**

    Dated this 18th day of January, 2023.

                                      */s/ Clare R. Hochhalter*
                                      Clare R. Hochhalter, Magistrate Judge
                                      United States District Court